UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| VANDERBILT MORTGAGE AND ) <br> FINANCE, INC., ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FIRST FRANKLIN FINANCIAL ) <br> CORPORATION, ) <br>     Defendant. ) | No.  3:10-CV-7 <br> (Phillips) |

## **MEMORANDUM AND ORDER**

In this breach of contract action, plaintiff Vanderbilt Mortgage and Finance, Inc., invokes the court's diversity jurisdiction under 28 U.S.C. § 1332. Defendant First Franklin Financial Corporation moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint on the ground of lack of personal jurisdiction [Doc. 11].[1]  Plaintiff Vanderbilt Mortgage has responded in opposition [Doc. 14].  After reviewing the record, the court concludes the defendant's motion is not well taken and it will be denied.

---

[1] First Franklin also moved to dismiss Vanderbilt Mortgage's negligent misrepresentation and breach of implied warranties claims for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Vanderbilt Mortgage filed an amended complaint on March 10, 2010 removing the negligent misrepresentation and breach of implied warranties claims.  First Franklin renewed its motion to dismiss [Doc. 18] on March 24, 2010 on the ground of lack of personal jurisdiction.

**I. Standard of Review**

Plaintiff Vanderbilt Mortgage bears the burden of demonstrating that personal jurisdiction exists. *Youn v. Track, Inc.,* 324 F.3d 409, 417 (6th Cir. 2003); *Neogen Corp v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002); *Third Nat'l Bank v. WEDGE Group Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989). There is no need for an evidentiary hearing. The motion will be decided based upon the affidavits in the record.

In the absence of an evidentiary hearing, Vanderbilt Mortgage need only demonstrate facts which support a finding of personal jurisdiction. Vanderbilt Mortgage must make a *prima facie* showing that personal jurisdiction exists to defeat the Rule 12(b)(2) motion to dismiss. The burden on Vanderbilt Mortgage is relatively slight. The court considers the pleadings and affidavits in the light most favorable to Vanderbilt Mortgage. Dismissal under Rule 12(b)(2) is proper only if the specific facts alleged by Vanderbilt Mortgage, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc., v. Still N The Water Pub.,* 327 F.3d 472, 478 (6th Cir. 2003); *Neogen,* 282 F.3d at 887; *Calphalon Corp v. Rowelette*, 228 F.3d 718, 721 (6th Cir. 2000); *Kerry Steel, Inc. v. Paragon Indus.,* 106 F.3d 147, 149 (6th Cir. 1997).

**II. Facts**

According to the complaint, Vanderbilt Mortgage is a Tennessee corporation with its principle place of business in Maryville, Tennessee. First Franklin is a Delaware corporation with its principle place of business in San Jose, California. In January of 2008, First Franklin and Vanderbilt Mortgage entered a Mortgage Loan Sales Agreement (the

"MLSA") whereby First Franklin sold, and Vanderbilt Mortgage purchased, First Franklin's right, title and interest in certain residential mortgage loans. Pursuant to the terms of the MLSA, First Franklin made various representations and warranties to Vanderbilt Mortgage regarding the loans, including representations and warranties that the loans were first lien residential mortgage loans and the loans (and obligors thereunder) were not subject to bankruptcy or legal proceedings. In addition, First Franklin was required to deliver certain loan documentation for each loan within a period of time following the closing date specified under the MLSA. Several of the loans transferred pursuant to the MLSA were secured by property located in Tennessee. First Franklin is alleged to be in breach of the MLSA with respect to four loans sold under the agreement. Vanderbilt Mortgage's allegations are:

- With respect to a loan referred to as the "MF Loan," the borrower was in bankruptcy as of the date Vanderbilt Mortgage purchased the loan.

- With respect to a loan referred to as the " JM Loan," the loan was subject to litigation, and certain *lis pendens* claims and liens were superior to the mortgage lien related to the loan purchased by Vanderbilt Mortgage.

- With respect to a loan referred to as the "ST Loan," the loan and associated mortgage lien were subject to several superior recorded liens, and First Franklin failed to deliver all required documents related to the loan to Vanderbilt Mortgage within the specified time under the MLSA; and

- With respect to a loan referred to as the "JR loan," First Franklin failed to deliver all required documents related to the loan to Vanderbilt Mortgage within the time specified under the MLSA.

Vanderbilt Mortgage alleges that these issues constitute breaches of the MLSA as well as warranties and representations that were made by First Franklin in the MLSA. The MLSA provides continuing and ongoing duties by First Franklin after the date of closing to repurchase the breach loans and to indemnify Vanderbilt Mortgage for any and all claims

and damages arising out of First Franklin's breach of the warranties and covenants contained in the MLSA. Vanderbilt Mortgage seeks an award of specific performance requiring First Franklin to meet its ongoing obligation to repurchase the breach loans and to indemnify Vanderbilt Mortgage for damages resulting from First Franklin's breach of warranties and covenants set forth in the MLSA.

## III. Analysis

Based on these facts and circumstances, the court concludes that Vanderbilt Mortgage has met its burden of making out a *prima facie* case that this court may exercise personal jurisdiction over First Franklin.

### A. Due Process and the Tennessee Long-Arm Statute

In this diversity case, the court may exercise personal jurisdiction if it is authorized by the law of the forum state (Tennessee) and otherwise consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Youn*, 324 F.3d at 417; *Neogen*, 282 F.3d at 888; *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001); *Calphalon*, 228 F.3d at 721; *Kerry Steel*, 106 F.3d at 148-49; *WEDGE Group,* 882 F.2d at 1089.

The Tennessee Long-Arm Statute, Tenn. Code Ann. § 20-214, extends personal jurisdiction to the full limit allowed by due process. Tenn. Code Ann. § 20-2-214(a)(1) provides in relevant part that nonresidents of Tennessee are subject to the jurisdiction of the Tennessee courts as to any action or claim for relief arising from the

transaction of any business within Tennessee.  Section 20-2-214(a)(6) further provides that nonresidents of Tennessee are subject to the jurisdiction of the Tennessee courts on any basis not inconsistent with the United States Constitution.  The Tennessee Long-Arm Statute is coterminous with the limits on personal jurisdiction imposed by the Fourteenth Amendment's Due Process Clause.  *Bridgeport Music*, 327 F.3d at 477; *Neal*, 270 F.3d at 331; *WEDGE Group*, 882 F.2d at 1089; *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 376-77 (6th Cir. 1968).  Because the limits of personal jurisdiction under Tennessee law and the limits of personal jurisdiction as a matter of Constitutional Due Process are identical, the two inquires are merged.  *Bridgeport Music*, 327 F.3d at 477; *Aristech Chemical Int'l Ltd v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir. 1998).

The bedrock principle of personal jurisdiction due process analysis is that the non-resident defendant must have sufficient "minimum contacts" with the forum state such that the maintenance of the suit there does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Youn*, 324 F.3d at 417; *Neal*, 270 F.3d at 331; *WEDGE Group*, 882 F.2d at 1089.  Minimum contacts exist when a defendant's conduct and connection with the forum state are such that the defendant "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Youn,* 324 F.3d at 417; *Neal*, 270 F.3d at 331; *WEDGE Group,* 882 F.2d at 1089.

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no

meaningful contacts, ties, or relations. Due Process requires that individuals have "fair warning" that a particular activity may subject them to the forum's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Where a forum seeks to assert specific personal jurisdiction over an out-of-state defendant who has not consented to suit there, the "fair warning" requirement is satisfied if the defendant purposefully directed its activities at a forum resident.

For there to be sufficient minimum contacts, the defendant must purposefully avail itself of the privilege of conducting business within the forum state, thereby invoking the benefits and protections of the forum state's laws. *Burger King*, 471 U.S. at 475; *Youn*, 324 F.3d at 417; *Neogen*, 282 F.3d at 889; *Neal*, 270 F.3d at 331. The minimum contacts requirement is satisfied if the defendant purposefully directs its activities at residents in the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King*, 471 U.S. at 472; *Neal* 270 F.3d at 331. "Purposeful availment by the defendant of the privilege of acting in, or causing a consequence in, the forum state is the *sine qua non* for *in personam* jurisdiction." *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1273 (6th Cir. 1998); *Kerry Steel*, 106 F.3d at 150; *Southern Machine*, 401 F.2d at 381-82.

The purposeful availment test ensures that a defendant will not be unreasonably haled into a forum solely as a result of random, fortuitous or attenuated contacts, or as a result of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475; *Youn*, 324 F.3d at 417; *Neogen* 282 F.3d at 889; *Calphalon*, 228

F.3d at 721-22; *WEDGE Group*, 882 F.2d at 1090. Even a single act by a defendant deliberately directed toward a Tennessee resident that gives rise to a cause of action can support a finding of purposeful availment and meet the due process requirement of minimum contacts. *McGee v. Int'l Life Ins., Co.* 355 U.S. 220, 223 (1957); *Youn*, 324 F.3d at 419; *Neal*, 270 F.3d at 331.

B. Specific Personal Jurisdiction and the *Southern Machine* Test

Courts distinguish between general jurisdiction and specific jurisdiction, either one of which is an adequate basis for personal jurisdiction. *Burger King*, 471 U.S. at 472-73 n. 15; *Youn*, 324 F.3d at 417-18; *Kerry Steel*, 106 F.3d at 149; *WEDGE Group*, 882 F.2d at 1089. In the instant case the court is only concerned with specific jurisdiction. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's specific contacts with the forum state. *Helicopteros Nacionales de Columbia S.A. v. Hall* 466 U.S. 408, 414 n. 8 (1984); *Youn*, 324 F.3d at 418; *WEDGE Group*, 882 F.2d at 1089.

Consistent with constitutional due process, the Sixth Circuit has established a three-part test for determining whether a federal court may exercise specific personal jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting or causing a consequence in the forum state; (2) the plaintiff's cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Youn*,

7

324 F.3d at 418; *Neal*, 270 F.3d at 332; *Calphalon*, 228 F.3d at 721; *WEDGE Group*, 882 F.2d at 1090; *Southern Machine*, 401 F.2d at 381. This is commonly referred to as the *Southern Machine* test.

In *Cole v. Mileti*, the Sixth Circuit further explained the three-prong test and contacts demonstrating purposeful availment:

> If, as here, a non-resident defendant transacts business by negotiating and executing a contract via telephone calls and letters to [the forum state] resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in [the forum state]. Furthermore, if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in [the forum state]. Finally, when we find that a defendant ... purposefully availed himself of the forum and that the cause of action arose directly from that contact, we presume the specific assertion of personal jurisdiction was proper.

*Cole,* 133 F.3d 433, 436 (6th Cir. 1998).

All three elements of the *Southern Machine* test are met here. Defendant First Franklin has purposefully availed itself of the privilege of acting or causing a consequence in the forum State of Tennessee. Vanderbilt Mortgage's claim arises from First Franklin's activities in Tennessee. First Franklin's acts and consequences caused by its acts have a substantial enough connection with Tennessee to make this court's exercise of personal jurisdiction over the defendant in the Eastern District of Tennessee fair and reasonable.

C.  Minimum Contacts and Purposeful Availment

First Franklin argues that it has not had sufficient minimum contacts with Tennessee, and it has not purposefully availed itself of the privilege of acting or causing a consequence in Tennessee. First Franklin states that it does not own or operate any businesses in Tennessee; does not conduct any business in Tennessee; and does not have any assets in Tennessee. First Franklin is not incorporated in Tennessee nor qualified to do business in Tennessee, and does not have any subsidiaries incorporated or qualified to do business in Tennessee. First Franklin argues that its contacts with Vanderbilt Mortgage in Tennessee were limited to mail, e-mail, facsimile and telephone, and that none of its representatives involved in negotiating or executing the MLSA were located in, or ever traveled, to Tennessee.

Further, First Franklin contends that the MLSA contemplates a one-time sale, rather than a continuing relationship. The connection of the loan pool purchased by Vanderbilt Mortgage with Tennessee is *de minimus*; a few of the loans in the pool involve Tennessee mortgages, but the majority of the mortgages are outside the forum. Because First Franklin did not engage in purposeful availment, it argues that it cannot be subject to specific jurisdiction in Tennessee.

These arguments fail. The court recognizes that the mere use of interstate telephone calls, facsimiles, e-mail and mail to communicate are secondary or ancillary factors, and cannot alone automatically provide the necessary minimum contacts required by due process. *Kerry Steel*, 106 F.3d at 151; *Reynolds v. Int'l Amateur Athletic Fed.*, 23 F.3d 1110, 119 (6th Cir. 1994). Moreover, the contract between Vanderbilt Mortgage and

First Franklin, standing alone, does not automatically establish that the defendant has sufficient minimum contacts with Tennessee. *Burger King*, 471 U.S. at 478; *Calphalon*, 228 F.3d at 722; *Kerry Steel*, 106 F.3d at 151; *Reynolds*, 23 F.3d at 1118.

To determine whether there are sufficient minimum contacts with Tennessee and whether First Franklin has purposefully availed itself of the privilege of acting or causing a consequence in Tennessee, the court evaluates the prior negotiations and contemplated future consequences, along with the contract terms and the parties' actual course of dealing. *Burger King*, 471 U.S. at 479; *Reynolds*, 23 F.3d at 1118. It is the quality of contacts, not the quantity of contacts, that is important. *Neal*, 270 F.3d at 332; *Calphalon*, 228 F.3d at 722-23; *Reynolds*, 23 F.3d at 1119.

The court finds that First Franklin has sufficient minimum contacts with Tennessee to satisfy due process and establish personal jurisdiction in the Eastern District of Tennessee. First Franklin knowingly entered into a contract with Vanderbilt Mortgage, a Tennessee corporation. Moreover, all of the correspondence First Franklin sent to and received from Vanderbilt Mortgage in negotiating the terms of the MLSA was sent to or received from Tennessee. The MLSA provided that the closing was to take place in Maryville, Tennessee. To close on the transaction, First Franklin was required to forward its executed signatures, closing statement, and the other transaction documents set forth in the MLSA to Vanderbilt Mortgage in Tennessee. Additionally, in connection with the sale of the mortgage loans to Vanderbilt Mortgage, First Franklin delivered the mortgage loan files and documents to Vanderbilt Mortgage's offices in Tennessee. Finally, the proceeds

First Franklin received from Vanderbilt Mortgage were sent from Tennessee to First Franklin, which First Franklin accepted.

Not only were all of the events that led up to closing of the MLSA either directed to or originated out of Tennessee, but under the terms of the MLSA, First Franklin has continuing duties to Vanderbilt Mortgage that make it reasonably foreseeable that it will be haled into court in Tennessee. First Franklin agreed to indemnify Vanderbilt Mortgage in the event First Franklin breached the warranties and covenants contained in the MLSA. This indemnity agreement extends beyond closing, beyond the transfer of the mortgage files, beyond the receipt of payment, and through to the present. Therefore, First Franklin should reasonably foresee being haled into court in Tennessee pursuant to its agreement to indemnify Vanderbilt Mortgage in the event First Franklin breached its warranties and covenants – the exact claims asserted by Vanderbilt Mortgage in this litigation.

In addition, First Franklin has a continuing obligation to repurchase loans that did not conform to the representations and warranties provided by First Franklin. Not only is the obligation a continuing obligation to a Tennessee company with whom First Franklin directed its business, but several of the mortgage loans previously owned by First Franklin and transferred pursuant to the MLSA were secured by real property located in Tennessee.

With regard to interstate contractual obligations, First Franklin deliberately reached out beyond California to create contractual relationships and obligations with a citizen of Tennessee and is subject to regulation and sanctions in Tennessee for the

consequences of its activities.  *Burger King*, 471 U.S. at 473; *J.I. Case Corp v. Williams*, 832 S.W.2d 530, 532 (Tenn. 1992).  A defendant residing in California who initiates a contract and does business in Tennessee should reasonably anticipate being haled into a Tennessee court when the defendant breaches the contract.

Personal jurisdiction cannot be avoided merely because First Franklin is not physically present in Tennessee.  *Southern Machine*, 401 F.2d at 382; *Floratine Products Group, Inc. v. Brawley*, 282 F.Supp.2d 798, 200 (W.D.Tenn. 2003); *Nicholstone Book Bindery, Inc. v. Chelsea House Publishers,* 621 S.W.2d 560, 563 (Tenn. 1981).  "Physical presence" in the forum state "is not the touchstone of personal jurisdiction." *Neal*, 270 F.3d at 333.  it is "an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a state in which business is conducted." *Burger King*, 471 U.S. at 476.  So long as First Franklin's actions and efforts are purposefully directed toward Tennessee resident Vanderbilt Mortgage, the absence of the defendant's physical presence in Tennessee cannot defeat personal jurisdiction in this forum.  *Id.; Neal*, 270 F.3d at 333.  Accordingly, the court finds that the first element of the *Southern Machine* test is met.

D.  Plaintiff's Claim Arises from Defendant's Activities in Tennessee

The second part of the *Southern Machine* test is satisfied because many of the operative facts of this lawsuit arise from the contract (MLSA) and from First Franklin's business activities in Tennessee.  First Franklin's representations and warranties that form

12

the basis for Vanderbilt Mortgage's breach of contract and breach of warranty claims were all communicated to Vanderbilt Mortgage in Tennessee both prior to closing and at the time of closing as set forth in the MLSA. Moreover, for each of the mortgage loans, First Franklin agreed to provide the loan documents to Vanderbilt Mortgage in Tennessee. Vanderbilt Mortgage claims that, with respect to the breach loans, First Franklin did not convey the property interest that it represented and warranted it would and did not provide the required loan documents to Vanderbilt Mortgage in Tennessee in breach of First Franklin's warranties. In reliance on First Franklin's warranties, Vanderbilt Mortgage paid a substantial sum to First Franklin. With regard to the breach loans, it is alleged that First Franklin did not transfer to Vanderbilt Mortgage in Tennessee the first lien rights and documents that it represented it would.

Moreover, First Franklin agreed to continuing obligations a part of the MLSA. In its amended complaint, Vanderbilt Mortgage seeks specific performance of First Franklin's covenant to repurchase any loans that were not in compliance with the representations and warranties set forth in the MLSA. In order to carry out First Franklin's covenant, First Franklin would have to pay to Vanderbilt Mortgage the repurchase price for each of the breach loans as that figure is calculated pursuant to the MLSA. In exchange, Vanderbilt Mortgage would have to gather and provide First Franklin with the loan histories and loan documents for the breach loans so that First Franklin could enforce whatever property interest remained related to the breach loans. These actions require performance to be directed to and originated from Tennessee.

When the defendant entered into the contract establishing Vanderbilt Mortgage's obligations, it set in motion, continuing obligations and performance under the contract in Tennessee. *Southern Systems Inc. v. Torrid Oven Ltd.,* 58 F.Supp.2d 843, 850 (W.D.Tenn. 1999); *Nicholstone*, 621 S.W.2d at 564. The "arising from" requirement in the second prong of the *Southern Machine* test is satisfied because Vanderbilt Mortgage's breach of contract claim is directly related to and connected with First Franklin's contacts with Tennessee. *Youn*, 324 F.3d at 419; *WEDGE Group*, 882 F.2d at 1091 n. 2.

E. Fairness

When the first two elements of the *Southern Machine* test are met, an inference arises that the third element, fairness, is also present. *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996); *WEDGE Group*, 882 F.2d at 1092; *Southern Machine*, 401 F.2d at 384. Where the first two criteria are satisfied, "only the unusual case will not meet this third element." *Aristech*, 138 F.3d at 628; *Southern Machine*, 401 F.2d at 384.

First Franklin must present a "compelling case" that the presence of some other considerations would render personal jurisdiction unfair or unreasonable. *Burger King*, 471 U.S. at 477; *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988). The court finds that First Franklin has not met its burden of making out a compelling case that the exercise of personal jurisdiction over it in the Eastern District of Tennessee would be unfair or unreasonable.

14

To determine whether the exercise of personal jurisdiction over First Franklin is fair and reasonable, the court balances four factors: (1) the burden on the defendant; (2) the interests of the forum state (Tennessee); (3 ) the plaintiff's interest in obtaining relief; and (4) the interests of other states in securing the most efficient resolution of the controversy. *Asahi Metal Indus. Co. Ltd. v. Superior Court*, 480 U.S. 102, 113 (1987); *Youn*, 324 F.3d at 419; *CompuServe,* 89 F.3d at 1268; *American Greetings*, 839 F.2d at 1169-70.

First Franklin has not submitted any facts or proof to demonstrate that requiring it to litigate this breach of contract action in Tennessee would be unduly expensive or inconvenient. The only time that First Franklin's employees/witnesses would have to actually travel to Tennessee would be for trial. For discovery purposes, First Franklin's employees can be deposed in California. Moreover, depositions may be taken "for proof" and introduced into evidence at trial which would make it unnecessary for many of defendant's witnesses to have to travel to Tennessee.

In *Burger King*, the Supreme Court explains there are several reasons why a forum state may legitimately exercise personal jurisdiction over a non-resident defendant who has purposefully directed its activities toward the forum's residents. A state generally has a manifest interest in providing its residents with a convenient judicial forum to obtain redress for injuries caused by non-residents or out-of-state actors. Where individuals purposefully derive economic benefit from their interstate activities, it may be unfair to allow them to escape having to account in other states for consequences which are proximately

caused by such activities. "The Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.* 471 U.S. at 474; *see also Youn*, 324 F.3d at 419-20.

"Modern transportation and communications make it much less burdensome today for non-resident defendants to litigate and defend themselves in Tennessee where the defendants purposefully engage in business or economic activity in Tennessee. It will usually be fair to subject a non-resident defendant to the burdens and inconvenience of litigating in [Tennessee] for disputes relating to such business or economic activity." *SSM Indus. v. Fairchild Apparel Group Inc.*, 2004 WL 1109547 * 11 (E.D.Tenn. Jan. 16, 2004). In the instant case, defendant deliberately initiated a business transaction and entered into a contract with Vanderbilt Mortgage in Tennessee from which First Franklin planned to profit financially. The court is not persuaded that adjudicating this case in the Eastern District of Tennessee would be unfair, unreasonable, or unduly burdensome to First Franklin.

Moreover, when a contract is made with a Tennessee resident, the State of Tennessee has a strong interest in providing a judicial forum to resolve a suit based on a breach of the contract. Tennessee has a strong interest in adjudicating this controversy. Vanderbilt Mortgage bargained for specific representations, warranties, covenants and indemnification provisions with First Franklin as part of the MLSA. Once it realized that First Franklin had breached its representations and warranties with respect to the breach loans, it immediately sought cure from First Franklin. When that did not happen, it sought

to enforce its rights to repurchase and indemnification under the MLSA. When First Franklin did not comply with its obligations under the MLSA, Vanderbilt Mortgage filed this action seeking specific performance, monetary relief, and indemnification pursuant to the MLSA. The interests of the interstate judicial system do not appear to be implicated by permitting *in personam* jurisdiction in Tennessee. First Franklin has not demonstrated that the State of California would be a more efficient forum, or that California has a greater interest in this case than Tennessee. This court is capable of achieving the most efficient resolution of Vanderbilt Mortgage's breach of contract claim. Because the court has found plaintiff's argument regarding specific personal jurisdiction dispositive as to the motion to dismiss, the court need not address the remainder of defendant's arguments.

## IV. Conclusion

Accordingly, defendant First Franklin's motion pursuant to Federal Rule of Civil Procedure 12(B)(2) to dismiss Vanderbilt Mortgage's complaint on the ground of lack of personal jurisdiction [Docs. 11, 18] is **DENIED.**

**IT IS SO ORDERED.**

                                      **ENTER:**

                                                  s/ Thomas W. Phillips
                                                United States District Judge